UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

CHRISTOPHER BROOKS,

        Plaintiff,                     Case No. 1:14-cv-631

v.                                          Honorable Janet T. Neff

T. JONES et al.,

        Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. §§ 1981, 1983 and 1985, as well as the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint on grounds of immunity and/or failure to state a claim against "MDOC, Medical Provider" (*see* Am. Compl., docket #8, Page ID#30) and Defendants Bhavasar, Mamby, Lafleur, and Nurse Unknown Party #4. Moreover, Defendants Rielly, Mason, Jankart, Wright, Resident Unit Manager Unknown

Party #5, and Nurse Unknown Party #6 will be dismissed without prejudice because they are not mentioned in the amended complaint. The Court will serve the complaint against Defendants Gladsklov, Jones, Officer Unknown Party #1, Resident Unit Manager Unknown Party #2, and Assistant Resident Unit Supervisor Unknown Party #3.

## Discussion

I. Parties

Plaintiff Christopher Brooks was incarcerated with the Michigan Department of Corrections (MDOC) at Pugsley Correctional Facility (MPF) at the time that he filed the complaint.[1] The events about which he complains occurred while he was incarcerated at MPF, Charles Egeler Reception & Guidance Center (RGC), and West Shoreline Correctional Facility (MTF).[2] He sues the following MDOC employees at RGC: Dr. Janak R. Bhavasar,[3] Officer T. Jones, Officer (Unknown) Gladsklov, a second-shift officer identified as Jane Doe ("Unknown Party #1"), a Resident Unit Manager (RUM) identified as John Doe ("Unknown Party #2"), an Assistant Resident Unit Supervisor (ARUS) identified as John Doe ("Unknown Party #3"), and an intake nurse on November 1, 2012, who is identified as Jane Doe ("Unknown Party #4"). He also sues Dr. Audley Mamby, who is employed at MTF, and Physician Assistant (PA) Ouinn Lafleur, who is employed

---

[1] According to a letter received from Plaintiff after he filed this action, he was released from prison on July 1, 2014. (*See* docket #7.) His MDOC profile indicates that he was released on parole. *See* http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=240084 (visited December 3, 2014).

[2] Plaintiff refers to West Shoreline Correctional Facility as "MTF" or "Muskegon Temp Facility" in the pleadings. (*See* Compl., docket #1, Page ID#_; Am. Compl., docket #8, Page ID#31.) MTF is the acronym used by the MDOC for the West Shoreline Correctional Facility. *See* alphabetical list of prisons on the MDOC website, available at http://michigan.gov/corrections/0,4551,7-119-68854_1381_1385---,00.html (visited Dec. 2, 2014).

[3] Throughout his pleadings, Plaintiff uses more than one spelling for several of the parties' names (*e.g.*, "Bhauasar" for Bhavasar, "Gladskov" for Gladsklov, and "Laflur" for Lafleur). The Court will use the spellings from the list of defendants in the amended complaint. (*See* Am. Compl., docket #8, Page ID##30-31.)

at MPF. Finally, he sues a party identified as "MDOC, Medical Provider." (Am. Compl., docket #8, Page ID#30.)

Plaintiff named the following parties as defendants in the original complaint, but they are not named in the amended complaint: Nurses Heidi L. Rielly, Candi M. Mason, and Christopher J. Jankart; a RUM at RGC identified as Jane Doe ("Unknown Party #5"); a nurse identified as Jane Doe who examined Plaintiff on November 27, 2014[4] ("Unknown Party #6"); and Health Unit Manager (HUM) K. Wright. Because they are not named in the amended complaint, the Court assumes that Plaintiff does not intend to pursue an action against them at this time. Thus, Defendants Rielly, Mason, Jankart, Wright, Unknown Party #5, and Unknown Party #6 will be dismissed without prejudice.

II. Factual Allegations

According to the allegations set forth in the original and amended complaints,[5] when Plaintiff arrived at RGC on November 1, 2012, he told the intake nurse (Unknown Party #4), that he had several medical conditions: injuries to his knee, obesity (body weight over 300 pounds on a five-foot, nine-inch frame), and "[um]bilical [h]ern[i]a surgery." (Compl., docket #1, Page ID#3.) She told him that he would see a doctor the following day, but she failed to assign him to a lower bunk. The next day, Dr. Bhavasar examined Plaintiff and issued him a "medical detail order" for a lower bunk due to his medical conditions. (*Id.*) That same day, Plaintiff notified Officer

---

[4]In his original complaint, Plaintiff refers to a nurse who conducted an "exam" on *December* 27, 2012 (Compl., docket #1, Page ID#2), but no such examination is described in the allegations. The Court assumes that Plaintiff is referring to the nurse who examined him on *November* 27, 2012.

[5]Even though Plaintiff's amended complaint supercedes the original version, the Court incorporates facts from the original because the amended complaint is very brief and contains few allegations. Thus, the Court assumes that Plaintiff intends to rely upon the more detailed description of facts contained in the original complaint.

Gladsklov, Officer Jones, second-shift officer Unknown Party #1, RUM Unknown Party #2, and ARUS Unknown Party #3 of the medical detail order and the fact that he needed an accommodation for his conditions. Apparently, these officials did not respond to Plaintiff's request. In addition, Officer Jones stated that, notwithstanding Plaintiff's medical detail, Jones was not authorized to move Plaintiff to a lower bunk without permission from the RUM or the ARUS.

On November 27, 2012, Plaintiff attempted to climb down from his top bunk with one leg on the edge of the bottom bunk and his other leg supported by a metal chair. As he did so, the chair broke, causing Plaintiff to fall. As he fell to the floor, Plaintiff's back, torso and neck collided with the steel frame of the bottom bunk. Plaintiff asked for assistance and was taken to the healthcare unit for an examination. A nurse (Unknown Party #6) conducted a "quick" evaluation and stated that Plaintiff had sustained "just a strained muscle [and] minor swelling." (Compl. at Page ID#4.) She gave him Tylenol for his pain and some information about exercising. He requested a more thorough examination by a doctor and an x-ray because of "severe pain" resulting in "inability to ambulate," but she refused. (*Id.*) He tried to explain that something was "terrible wrong" with his back, but again she refused. (*Id.*) She signed a pass to change his bunk and sent him back to his cell. When he returned to his cell, the unit officer moved him to a bottom bunk.

Approximately one week later, on December 4, 2012, Plaintiff sent a kite to healthcare complaining about "sever[e]" pain in his side and back; he received no response. (*Id.*) On December 6, 2012, he was transferred to MPF.

When Plaintiff arrived at MPF, he immediately notified healthcare staff about his injury, his continuing pain, and the "debilitating condition" of his back. (*Id.*) He then sent a kite to the medical unit on December 14, 2012. At a healthcare appointment, he received a hot water bottle

and some pain medication. These remedies did not relieve his pain, however, or the numbness in his leg, his difficulty in bending or getting out of bed, his loss of mobility, and the strain on his "lower extremities from the waist down." (*Id.*)

Plaintiff then filed a grievance on December 27, 2012, complaining about a lack of treatment by healthcare staff. The grievance was denied. He requested a step II appeal form, but HUM Wright, who was acting as grievance coordinator at the time, refused to send him a form.

On December 30, 2012, Plaintiff filed a grievance complaining that he was denied access to an "accident report." (*Id.* at Page ID#5.) The grievance was rejected at step I and Defendant Wright refused to provide him a step II grievance form.

On February 2, 2013, Plaintiff was transferred to MTF. Upon arrival, he notified medical staff of his injury, his "painful continuous condition," and his desire for an additional medical examination and further diagnostic testing. (*Id.*) In May 2013, he filed another grievance, complaining about lack of treatment and proper evaluation of his condition. The grievance was denied at step I and on appeal at steps II and III. On October 30, 2013, Plaintiff was transferred back to MPF.

According to his original and amended complaints, Plaintiff seeks the following relief: (1) a declaratory judgment that (a) Defendants Jones, Gladsklov, second-shift officer Unknown Party #1, RUM Unknown Party #2, and ARUS Unknown Party #3 were negligent in following the medical detail order and/or were deliberately indifferent to Plaintiff's need for a bottom-bunk assignment; (b) Defendants Mamby and Lafleur were negligent for failing to properly diagnose and treat Plaintiff's injury and pain and for denying Plaintiff's request for further diagnostic testing and examination; (c) the nurses who examined Plaintiff (Nurses Jankart, Rielly, Mason, the

intake nurse, Unknown Party #4, and the examining nurse, Unknown Party #6) were not qualified to diagnose Plaintiff's condition, were negligent in providing care, and/or were deliberately indifferent to his need for care; and (d) Defendant Wright's failure to provide step II grievance forms deprived Plaintiff of due process and constituted deliberate indifference to his medical needs; (2) an injunction requiring Defendants to provide an MRI; and (3) compensatory and punitive damages.

### III. Immunity

Plaintiff sues a party identified as "MDOC, Medical Provider," which apparently refers to the MDOC or one of its departments. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). This immunity applies to claims under 42 U.S.C. §§ 1981, 1983 and 1985. *See Ejikeme v. Violet*, 307 F. App'x 944, 951 (6th Cir. 2009) (holding that Eleventh Amendment applies to claims under section 1981); *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 383 (6th Cir. 1993) ("Congress did not intend to abrogate the states' Eleventh Amendment immunity by passing section 1983."); *An–Ti*

*Chai v. Mich. Technological Univ.*, 493 F. Supp. 1137, 1162 (W.D. Mich. 1980) (holding that the Eleventh Amendment applies to claims under § 1985). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)).

The MDOC is not necessarily immune from suit under the ADA, *see United States v. Georgia*, 546 U.S. 151, 159 (2006), but for the reasons stated in section IV *infra*, Plaintiff does not state an ADA claim. Therefore, the Court will dismiss the party identified as "MDOC, Medical Provider."

### IV. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

### A. 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Construing the complaint liberally, Plaintiff contends that his Eighth Amendment rights were violated when: (1) the intake nurse at RGC, Unknown Party #4, failed to assign him to a bottom bunk; (2) prison officials at RGC (Officer Gladsklov, Officer Jones, the RUM, the ARUS, and a second-shift officer) did not accommodate Plaintiff's request for a bottom bunk even though he had been issued a medical detail for one; (3) a nurse at RGC evaluated his injury on November 27, 2012, and gave him Tylenol but refused to order further tests or allow an examination by a physician; (4) Doctor Mamby and PA Lafleur did not adequately treat his pain or order further diagnostic testing for his condition; (5) the nurses who examined Plaintiff did so without proper qualifications to diagnose his condition; (6) he did not receive an adequate response to his requests

for treatment of his back and neck; and (7) HUM Wright denied his request for grievance forms to appeal grievances regarding a lack of medical care.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

1. Intake nurse: bottom-bunk assignment

The intake nurse at RGC, Unknown Party #4, was not deliberately indifferent to Plaintiff's needs when she failed to assign him to a bottom bunk on the day of his arrival at the facility. She told him that he would be evaluated by a doctor the following day. Plaintiff alleges no facts from which to infer that sleeping on an upper bunk for one evening posed a serious risk of substantial harm, let alone that she was deliberately indifferent to such a risk. He does not allege that his prior knee injury, hernia surgery, or weight presented a serious risk of harm in these circumstances. *Cf. Mulazim v. Corrigan*, 7 F. App'x 427, 430 (6th Cir. 2001) (dismissing claim that defendants improperly assigned plaintiff a top bunk despite his age (56 years) and prior knee injury); *Burley v. Upton*, 257 F. App'x 207, 210 (11th Cir. 2007) ("Even if Burley did have a 'serious medical need,' he failed to show that officials were anything more than negligent by keeping him in a top bunk for five days.").

2. Housing officers: bottom-bunk assignment

Construing the complaint generously, Plaintiff alleges that several officers at RGC (Officer Gladsklov, Officer Jones, second-shift officer Unknown Party #1, RUM Unknown Party #2, and ARUS Unknown Party #3) denied or failed to respond to his request for a bottom bunk, even though he had received a medical order authorizing one. Also, Officer Jones told Plaintiff that he did not have authorization to change Plaintiff's assignment without approval from the RUM or the ARUS. At this stage of the proceedings, the Court concludes that these allegations are adequate to state an Eighth Amendment claim against the foregoing officers.

3. Evaluation and treatment on November 27, 2012

After Plaintiff was injured, a nurse (Unknown Party #6) quickly evaluated his injury and concluded that he had strained a muscle and sustained some minor swelling. She gave him Tylenol for his pain. Plaintiff requested additional testing and an evaluation by a physician, but she refused. As indicated *supra*, Plaintiff does not identify Unknown Party#6 as a defendant in his amended complaint; thus, she will be dismissed without prejudice.

Even if Plaintiff did name her as a defendant, he does not state a claim against her. Plaintiff does not allege any specific harm to his health as a result of the her failure to approve additional testing or evaluation by an physician. Even assuming that the treatment she offered was inadequate for his pain, and did not address an underlying condition, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that

> a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Simply put, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment do not state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997). The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014). "Where the claimant received treatment for his condition . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

Here, the nurse provided some pain medication to Plaintiff based on her assessment that he had strained a muscle. There is no indication that this care was so "woefully inadequate as to amount to no treatment at all." *Alspaugh*, 643 F.3d at 169. Even assuming that her evaluation was brief, her diagnosis incorrect, and her treatment ineffective for his condition, there are no facts

from which to infer that she was aware of, and deliberately indifferent to, a serious medical need requiring additional care. Thus, he does not state a claim against her.

### 4. Treatment by Dr. Mamby and PA Lafleur

Plaintiff complains that Dr. Mamby and PA Lafleur did not properly diagnose or treat his back pain. They chose to prescribe pain medication and to provide information about exercise. They did not allow him to obtain an MRI, which Plaintiff asserts is indicative of a "pattern of neglect and malpractice," and which resulted in "ongoing discomfort[] and excruciating pain." (Compl., docket #1, Page ID#6.) Like his allegations against Nurse Unknown Party #6, his allegations against Defendants Mamby and Lafleur do not suffice to show deliberate indifference. Plaintiff acknowledges that Defendants Mamby and Lafleur responded to his medical needs by providing medication for his pain. Plaintiff complains that they should have ordered an MRI, but as the Supreme Court has stated, "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 107; *see also Mitchell*, 553 F. App'x at 605 ("[A] desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim."). Likewise, Plaintiff's disagreement with Defendants' decision not to order an MRI does not state a claim under § 1983.

Plaintiff implies that the treatment he received (i.e., pain medication and exercise recommendations) was inadequate, but he does not indicate why that is the case, let alone that the treatment was so "woefully inadequate as to amount to no treatment at all." *Alspaugh*, 643 F.3d at 169. Plaintiff alludes to continuing pain and discomfort, but ineffective or even negligent treatment

-13-

does not give rise to an Eighth Amendment claim. *See Estelle*, 429 U.S. at 106; *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) ("When a [medical professional] provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation."). Moreover, Plaintiff does not allege that Defendants Mamby and Lafleur were aware of any significant pain after they prescribed medication and deliberately disregarded his complaints. Consequently, he does not state an Eighth Amendment claim.

### 5. Treatment by nurses

Plaintiff asserts in his original complaint that the nurses who examined him (Unknown Party #4, Unknown Party #6, Jankart, Rielly and Mason) were not qualified to diagnose his condition, which "shows a consistent pattern of negligence[,] [v]iolation of the [E]ighth [A]mendment, deliberate indifference, [and] reckless behavior of medical staff." (Compl., docket #1, Page ID#7.) Plaintiff does not state a claim against Unknown Party #4 and Unknown Party #6, for the reasons stated *supra*. Furthermore, Defendants Unknown Party #6, Jankart, Rielly and Mason will be dismissed from the action because are not named in the amended complaint. In any event, the mere fact that nurses examined him without sufficient qualifications does not, in itself, establish deliberate indifference on their part. The pertinent issue is whether they were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," *see Farmer,* 511 U.S. at 837, and then disregarded the risk. Plaintiff's allegations do not make this showing.

6. <u>Inadequate responses by healthcare staff</u>

Plaintiff alleges that he sent several kites to healthcare staff complaining about his condition, but he did not receive an adequate response. On December 4, 2012, while he was housed at RGC, he sent a kite complaining about "severe" pain in his side and back, but he did not receive a response. After he was transferred to MPF, he notified staff about his "debilitating" condition and pain in his back, and then approximately one week later, he sent another kite to healthcare. He received a water bottle and pain medication in response to his kite, but these treatments were not sufficient to relieve his pain. Eventually, near the end of December that year, he filed a grievance complaining about a lack of treatment. In addition, when he arrived at MTF in February 2013, he notified medical staff at that facility of his painful condition and desire for additional treatment and evaluation. Apparently, he did not receive the treatment he desired. Several months later, he filed another grievance complaining about a lack of proper treatment and evaluation of his conditions.

None of the foregoing allegations regarding the lack of adequate responses to his healthcare requests identify any individuals. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Furthermore, to state

a claim under § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has not alleged that any of the individual Defendants were involved in responding, or failing to respond, to his healthcare requests. Consequently, his allegations regarding these requests do not state a claim against them.

### 7. Denial of grievance forms by HUM Wright

In his original complaint, Plaintiff contends that HUM Wright, in her capacity as grievance coordinator, acted with deliberate indifference to his medical needs and deprived him of due process when she denied his requests for forms to appeal his grievances. Plaintiff does not name Wright as a defendant in his amended complaint, however. Thus, she will be dismissed without prejudice.

Even if Plaintiff had named Wright as a defendant in the amended complaint, his allegations would not state a claim against her. Plaintiff does not have a protected right to access the grievance process. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003). Without a protected interest in the grievance procedure, he cannot state a due process claim. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) ("Without a protected liberty or property interest, there can be no federal procedural due process claim.").

Moreover, her actions do not state a claim under the Eighth Amendment. Generally, the denial of a grievance or the failure to act in response to one does not give rise to liability under § 1983. *See Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Likewise, denying a grievance regarding medical care does not make the

official is responsible for the lack of care. *See Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."). If the denial of a *grievance* does not subject an official to liability under § 1983 or make the official responsible for the conduct at issue in the grievance, it follows that the denial of access to a grievance *form* also does not state a claim.

Moreover, Wright is not liable for the conduct of the officials involved in providing (or failing to provide) medical care to Plaintiff merely because she supervised them in her role as Health Unit Manager. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter*, 532 F.3d at 575-76; *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has not alleged that HUM Wright engaged in any active unconstitutional behavior. Consequently, he does not state a claim against her under § 1983.

### B. 42 U.S.C. §§ 1981, 1985

"In order to state a claim under 42 U.S.C. §§ 1981 and 1985(3), a plaintiff must allege that he is a member of a protected class." *Underfer v. City of Toledo*, 36 F. App'x 831, 833 (6th Cir. 2002). "Section 1981 prohibits intentional race discrimination in the making and enforcing of

contracts with both public and private actors." *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 867-68 (6th Cir. 2001). Section 1985(3) prohibits a conspiracy "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." 42 U.S.C. § 1985(3). "[T]he Supreme Court has stated that '[t]he language [in § 1985] requiring intent to deprive of equal protection, or equal privileges and immunities, means there must be some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions.'" *Radvansky v. Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). The class of individuals protected by § 1985(3) are "those so-called discrete and insular minorities that receive special protection under the Equal Protection Clause because of inherent personal characteristics." *Volunteer Med. Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 224 (6th Cir. 1991) (internal quotation marks and citation omitted). Plaintiff has not alleged that he is a member of a protected class, let alone that Defendants discriminated against him on account of his race or membership in such a class. Consequently, he fails to state a claim under either § 1981 or § 1985.

### C. ADA

Plaintiff also cites the ADA as a basis for relief. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II, Plaintiff must show (1) that he is a qualified individual with a disability, and (2) that he was discriminated against or denied the benefits of a program, service or activity of the state on account of his disability. Plaintiff's allegations fail at the first step because he does not allege facts indicating

-18-

that he had a "disability," which is defined as "a physical or mental impairment that substantially limits one or more major life activities," or a record of such an impairment, or being "regarded" as having such an impairment. 42 U.S.C. § 12102(1). Plaintiff states only that he is obese and that he had knee injuries and a hernia surgery. He does not indicate how any of these conditions substantially limited a major life activity. *Cf. Tucker v. Ganshimer*, No. 1:07CV1035, 2008 WL 4452722, at *4 (N.D. Ohio Sept. 30, 2008) (holding that discomfort from climbing bunk ladders is not a substantial limitation on a major life activity).

Moreover, he does not allege that he was denied participation in, or the benefit of, a service, program or activity of the prison on account of a disability. Plaintiff complains that he was not assigned to a bottom bunk to accommodate his condition, but even assuming that a bed is a "service" or "program" provided by the prison, he was not deprived of a bed. He was able to use the top bunk until he injured himself. Following that, he was assigned to a lower bunk. Finally, he does not allege that Defendants discriminated against him on account of his disability. In other words, he does not allege that he was treated differently with respect to the temporary denial of a bottom bunk assignment, the denial of additional medical care, or the denial of grievance forms, because of his condition. Consequently, for all the foregoing reasons, he does not state an ADA claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court will dismiss Plaintiff's action against "MDOC, Medical Provider," and Defendants Bhavasar, Mamby, Jankart, Lafleur, and the intake nurse at RGC (Unknown Party #4), on grounds of immunity and/or failure to state a claim. Moreover, Defendants Rielly, Mason, Jankart, Wright, RUM Jane Doe (Unknown Party #5), and Nurse Jane Doe, who examined Plaintiff on November 27, 2014

(Unknown Party #6) will be dismissed without prejudice because they are not named in the amended complaint. The Court will allow the action to proceed against Defendants Gladsklov, Jones, and the individuals identified herein as Unknown Party #1, Unknown Party #2, and Unknown Party #3.

An Order consistent with this Opinion will be entered.

Dated:   December 17, 2014           /s/ Janet T. Neff
                                     Janet T. Neff
                                     United States District Judge